Good morning. Geoffrey Jones for the appellant. Anton Iagounov. I'm not sure how to say it either. I'd like to reserve two minutes for rebuttal, please. Sure. In the four counts here of impersonating a federal agent, Mr. Iagounov was convicted. I believe it's uncontested that one of his purposes, if not his only purpose, was to warn people about what he believed was a threat to national security. The narrative that he put in the affidavit that he submitted in each count. If that were his purpose, there were other ways to achieve that, you would agree, right? Other than fraudulently creating search warrants. No question. And for all we know, I know that there was the record in one place touches on one of the FBI agents that testified he had contacted the agent. It didn't come out at trial. Defense counsel didn't develop why he had contacted the agent. But he has, if you consider the content of the affidavit, just telling people, he may well have, this is speculative, but he may well have told a lot of people and no one is going to take it seriously. And perhaps he decided that if people thought he was a federal agent, and this was coming from the government, and it was part of an investigation, people would take it seriously. Yeah, but doesn't that just beg the question? I mean, can we even get into what his intent was? Like at the end of the day, there's no dispute. He fraudulently created search warrants. That is the trigger for the enhancement, isn't it? No. The trigger for the enhancement is to have the purpose of conducting an unlawful search. And I agree there's a connection there. And if someone goes to a court seeking a search warrant, I think in general you can infer that's certainly evidence that they intended to conduct an unlawful search. But it's far from dispositive. And there's a lot more evidence here that he didn't have the intent to actually show up at the Pentagon by himself with a fake ID and demand entry. And some of that evidence is in count one. He did the same thing. He had the same affidavit. It was a search warrant. He submitted it to the Capitol Police. He didn't try to conduct a search or obtain information from them. He wanted them to think it was leaked by the media. And then he takes that same search warrant. I think the question then becomes it seems clear in count one there was no purpose to conduct a search. So in counts two through four, which happened a little later, he submits it to courts. Did that reflect a new purpose that he didn't have in count one? I think for a few reasons the preponderance of the evidence says no, because he never submitted it to a court that had the authority to grant the search warrant. Let's say we take your argument at face value. How can we argue that this error was plain? Nobody complained about it before the court. So how can you show that? This error about the six-level adjustment, that was litigated below. The defense counsel did object to this one. I also made a claim about the – Claim one. Claim one. But on the obstruction enhancement issue, that was not objected to, was it? That's under plain error review, yes, sir. It was, okay. Yes, sir. Count one was abuse of discretion is the standard of review for count one. I mean, sorry, for the first claim I'm raising, it's abuse of discretion. Out of curiosity, and I guess I'll ask probably the same question from the government, I was trying to figure out. I'm not sure how relevant it is to our analysis. How did he actually think he was ever going to get these documents, which I think is sort of what you were leading to. He never walked down there and tried to execute the search warrant. So at best, as I understand it, he sends it into the government, or he later on sends it to a court that has no ability. Did he ever think he was actually going to get these documents? He submitted everything by e-mail. I think that, I think what he believed is, he did a lot, we do know, the record shows that he did a lot of research. He didn't just, he wasn't ignorant about how things worked. I mean, he's not a lawyer, certainly, but he did a lot of research. The government discusses that. He might be better than some lawyers we see before us. He certainly thinks so. But I think he didn't, he wasn't going to show up before a magistrate judge and argue for the search warrant. I don't think his target was a judge. You would agree if he did that, that the enhancement would be appropriate? That would be odd. I'm not sure. I think that would certainly be a factor in favor. However, I think it's inherently implausible that he's going to show up at the Pentagon and say he's a NASA agent. I think he's clearly, with all due respect, he's delusional in many respects, but he's not irrational in the pursuit of his goals. I think he would realize that showing up at the Department of Defense, they'd make one call to NASA and he'd be in handcuffs. Right, but I guess I'm just struggling with where, I understand your argument is, well, this was so implausible. But at what point does it become plausible enough? And I'm worried that if we adopt that argument, we just open this up to a whole bunch of life problems. I think what it comes down to, in that sense, is that it's looking at all the circumstances here, looking at all the evidence. This is a unique case. I could see nine cases out of ten where just applying for a warrant, especially applying for a warrant in a court that has the authority to grant the warrant, especially since we know he wasn't just, he didn't make a mistake. He researched, the record shows that he researched, one of the searches on his computer was, can a search warrant be filed in any federal jurisdiction? He knows the answer is no, and he never filed it in the geographic, he never filed it in the only district court that could grant it. Counsel, the guidelines aren't binding. The district court didn't have to impose this enhancement and could have imposed the enhancement and varied downward. Wasn't the district court the one who observed this defendant, had greater understanding of the content of the materials than we do, perhaps, and saw him in person and made a decision that this was serious? The district court certainly was there for the trial. Mr. Rubinoff didn't testify at trial. He did address the court at sentencing. I think the court's reasoning speaks for itself, and I believe the court essentially believed that if you apply for a warrant, that you must intend to conduct a search, and respectfully, I think the court failed to adequately consider a lot of facts here that simply rebut that idea. Are there any cases you can cite? I was trying to remember, go back through, that where a defendant has applied for a warrant and the court has said more is required to apply this enhancement. No, I looked at this particular guideline has very little case law, and I searched case law not only in this circuit but nationwide. There's nothing on point either way. It's a novel issue, if you will. All right. We'll give you time for rebuttal. Thank you. Good morning, Your Honors. If it pleases the court, James Connolly on behalf of the United States. We would ask that the court affirm the sentence for the following three reasons. First of all, the district court did not abuse its discretion when it found that Mr. Yaganov impersonated a federal agent for the purpose of ultimately conducting an illegal search. The district court found that he had earned that guideline section enhancement, that's 2J1.4B1's enhancement, for committing his crime with that ultimate purpose. The court found by a preponderance of the evidence that his detailed creation of the warrant, the manner in which he submitted it, and the work that he had gone to to deceive people was. Can I ask, in your view, what's the triggering factor that gets us across that? Is the fact, I mean, you talk about how much detail he put into creating it and the district court relied on that, and that it was submitted to a court, but we all agree that the court didn't have, I mean, well, do you agree that the court didn't have jurisdiction to actually enter or grant the search warrant? Well, insofar as it was a false search warrant. No, but, I mean, otherwise it would have had jurisdiction. I thought the court had never had jurisdiction in the first place, even if it had been a real warrant. Well, he sent it, if Your Honor means just the various courts that he sent it to.  I would imagine that they wouldn't have had jurisdiction necessarily unless there was a proper nexus to that district. So why is that seeking a search warrant if it never could have been granted in the first place? We all agree that there's nothing that could have been done to grant the search warrant here. Well, that assumes a level of sophistication on Mr. Yaginov's part. Well, no, it doesn't. I mean, I know you made that argument, but the point is he sent it to a court that never could have gotten it. So your point is he tried to get one, and just the fact that he did it the wrong way doesn't negate the warrant. And I'm just trying to flesh out where the line is here. Like, let's say he did the detailed search warrant, kept it on his computer, and never sent it. Could a district court have awarded the sixth-level enhancement now and said he clearly was thinking about doing this? Well, if he never sent it, then there would be a diminished amount of evidence that he intended to execute the search warrant. That's my question. So you would say that if that were the facts, the district court would have abused its discretion by granting the enhancement? Not necessarily. I want to follow up on this line of questioning because I think we would all agree this is a really bizarre case. And I am interested in the government's response to Laganov's argument that the allegations in the counterfeit warrants were so bizarre that they could not have possibly been for the purpose of conducting an unlawful search. What's the government's response to that? Well, if the defendant had thought that they were so bizarre as to not be plausible, he would not have been found to have had the intent to deceive. It's not just the facts in the affidavit. It's the formatting. It's the e-mails that it was attached to, the NASA OIG supervising agents that he falsely alleged for it to be coming from. I agree. I mean, to me, there's no question about the impersonating a federal officer. That's clear. He impersonated a federal officer. He did that. But that's not the issue. The issue is was that for the intent of conducting an illegal search or, yeah, an unlawful search. And, I mean, you know, abuse of discretion gets you a lot of the way here, but I'm struggling with at what point, you know, the argument sort of seems to be, well, if you do any action, then that can qualify to get an unlawful search. But certainly there has to be something that – I mean, what if he took it to the post office and handed it in and said, I want you to search this residence? Would you say, well, he tried? Yes. If he handed it in to the post office and said, I want to search this residence, then certainly that would be trying. Well, but that almost doesn't make sense because no rational person would think that going to the post office and handing him a search warrant is a way that you conduct an unlawful search. What if he took it to a grocery store and handed it – was checking out of Albertson's and hands it and he says, hey, give me the milk, here's the money, and by the way, execute the search warrant. I see what Your Honor is saying. But if I may, the court abuses its discretion in applying this enhancement only if its findings are illogical, implausible, or without support in inferences that can be drawn from the record. He is submitting this to clerk's offices with urgency, making it appear real. Several of the clerk's office personnel said it looked real, I was stressed by that, and so I passed it up the chain. So in certain ways he was actually successful in getting part of the way there. He is trying to get a search warrant authorized as the court found explicitly on the record at sentencing, and I can provide those sites if the court would like. He said that the court said very clearly that he found by preponderance of the evidence that he was trying to get that search warrant authorized. And so from the inference that we draw from the fact that he's trying to get a federal search warrant, he's sending it to multiple courts, he's doing as much as he can. And keep in mind, of course, he doesn't have to be successful every time. Every time he sends it in and gets a response, he gets more information. About how to do it better the next time. Correct. And so if we say if his goals were so lofty they're implausible is a defense, then that would simply encourage every defendant who does something like this to swing for the fences. But what's happening is that, and the government has argued, he sent it to the Capitol Police, he didn't get a response. It triggered a response, but he didn't know that. It triggered a response because it looked, according to the Capitol Police investigator, it looked like a real warrant or like it was done by someone who knew what a real warrant looked like. And so he investigated. And he contacted NASA, which, by the way, is something the defendant, while he was sending it to these judges in June and July of 2022, when he was sending it to the federal courts, he had the email addresses of those supervisory agents from NASA. He didn't send it to them. He didn't send them a letter saying, you know, we've come across this information. He was sending it to judges for the purpose of getting the search warrant authorized, and the court looked to that when it made its decision in its discretion to apply the six-level enhancement. Because even if there were some other parallel purpose of raising awareness, the evidence simply does not support that that was the sole reason or even that that was a major reason. Can I change the subject briefly? What should we do with his procedural challenge to his sentence? I'm sorry. Could the court elaborate, please? Well, basically, he's approaches in a variety of ways. But he also makes a procedural challenge in effect to the sentence. And I'm asking what the government's response is to that approach. I think I don't I don't want to speak over Judge Smith, but I think he's referencing the 3553A factors. Did the district court appropriately walk through those in enhancing the sentence? Now, that's that's part of it, certainly. Yes, it certainly did. And again, I can I can certainly point to sites in the record where the court said that although it had reviewed the guidelines and it had calculated the guidelines, that was as in all sentencing, that was just the beginning. The court said at least twice in the sentencing hearing that, in fact, the guidelines weren't ultimately what was driving this case. And the Ninth Circuit has has found before that if a judge is is going to say I'm not going to go with the guidelines, he can't simply just say that. And indeed, Judge Calabrata here did not. He went he explained the reasons why he was deviating from the guidelines, which included the fact that the defendant did not seem to have learned from from his arrest and prosecution. He was continuing to impersonate a federal agent from jail. He was also making outlandish accusations against the prosecutors in this case. And those were, of course, set against this backdrop where he has this long history, which the court acknowledged at sentencing, of harassing law enforcement. And so the 3553A factors were certainly taken into consideration. The the antagonistic behavior, but also the danger of recidivism. The court made clear that Mr. Yaganov did not seem to be able to get out of his own way and was going to continue with this. The court was deeply concerned he was going to continue with this behavior. And while the court's language may have been in fairly plain terms, the concern taken as a whole in reading the transcript, the concern is certainly there and it is attached to some very serious behavior when it comes to harassing law enforcement, harassing the prosecution and trying to impede the sentencing process. On obstruction for just obstruction of justice, there's like kind of three bases. We only need to find one of those, don't we? To support, say, one of those is not in violation of plain air. And the reason I raise that is I'm a little suspicious about whether it's obstruction of justice to call the CIA, you know, just a phone call to the CIA. I think filing false claims against the prosecutor to get them removed strikes me as more in the obstruction of justice category. So I wonder if you could just quickly address that. Yes, there there only need to be the court only need to find one basis. But but also I would I would point to the standard of review here, which allows the court to look to the entire record that the district court had before it to see if if if there was plain error in identifying that. And I think there's ample evidence. But from those three, there's those three incidents. But as I said, also this long history of of harassing the prosecutors, aside from the accusations that that was that we saw from the defendant after conviction. OK, thank you. We'll give time for rebuttal now. Regarding how he made the warrant look real, the email chains, the formatting, it looked like a real warrant. If it hadn't looked like a real warrant, no one would have thought he was a federal agent. If he had the front of the warrant, if the formatting of the warrant matched the content of the warrant, then his ploy wouldn't have worked. And it's the same ploy in count one. And we know from count one, there's no evidence there that he was trying to conduct a search. He just wanted to spread the information. He needed a real looking warrant for the Capitol Police to take him seriously. And the same counts two through four. He didn't need a real warrant to get to actually get the search warrant authorized. He needed that in the first place simply for people to think he was he was a federal agent. Can I ask about the practical implications? Isn't he he's basically served his sentence at this point, right? Yes, he's released. He's released this month. And so he's still he's still detained. He's still detained right now. Yes. OK, what is it if we were to go with this and send it back? I guess he would just have a lower sentence. It wouldn't affect any time in prison because he's already served it. Would that have an impact in the future? Yes, it would. It would. He's he was sentenced to 12 months of supervised release. So if the sentence if it if it went back and the judge on the district court decided to impose a lower sentence, it would reduce his term of supervised supervised release commensurately. Although I'm not so sure this guy shouldn't have some supervised release. What's that? I'm not so sure he shouldn't have some supervised release. I mean, he he needs a little bit of guidance, I think. No, no comment. Yeah. Except it is supervised. Released is part of the sentence. It is. It is punishment. Whether he needs it or. Yeah. If I briefly with the Capitol Police, one one important one fact, I think, is that he went to the Capitol Police first. And if he was planning to search the Pentagon, he's he I don't think he wants to give it. I don't think he would give a heads up to federal law enforcement. I get your argument, which is this is outlandish. I think to some degree, you're right. The more difficult question is, does it matter? I see. And I think we're going to have to grapple with that. Yeah. If I could very briefly address what the point about applying for a warrant equals this equals purpose to having the purpose to search. I think while that does have logical appeal, this one thing particular about this case is we have very clear evidence of another purpose. And we see that from count one, the purpose to spread information. We know he had that purpose. And given that he had that purpose. That that fully explains is that fully explains his conduct across all four counts. That doesn't mean he didn't also have the purpose to search something. But if you had a case where someone submitted a warrant application and there's no evidence that they had any other purpose, I think one could infer, well, they must have wanted to do a search then. But here we the record's pretty strong that we know we had a purpose that wasn't to to search anything. And it's just the question of did he also have the additional purpose of conducting a search? OK, thank you. Thank you to both parties for your arguments in the case. The case is now submitted.
judges: SMITH, NELSON, Morris